Paul A. Turcke (applicant *pro hac vice*)
Moore Smith Buxton & Turcke, Chartered
950 West Bannock Street, Suite 520
Boise, Idaho 83702
(208) 331-1800; (208) 331-1202 (fax)
pat@msbtlaw.com

Richard P. Duane (CSB #37880)
Duane & Seltzer, LLP
2000 Center St #300
Berkeley, CA 94704
(510) 841-8575; (510) 845-3016 (fax)
DickDuane2004@yahoo.com

Thomas A. Cohen (CSB #154581)
Law Offices of Thomas A. Cohen
639 Front St., 4th floor
San Francisco, CA 94111
(415) 777-1997; (415) 777-1990 (fax)
tomcohen@ionix.net

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| URSACK, Incorporated, JACQUELINE FLORINE, GARY FISHER, and PHOENIX VAMVAKIAS,<br><br>Plaintiffs,<br><br>vs.<br><br>SIERRA INTERAGENCY BLACK BEAR GROUP; NATIONAL PARK SERVICE; UNITED STATES FOREST SERVICE; Sequoia & Kings Canyon National Parks; CRAIG AXTELL, Superintendent; Yosemite National Park; MICHAEL TOLLEFSON, Superintendent; Inyo National Forest; JIM UPCHURCH, Forest Supervisor,<br><br>Defendants. | Case No.:<br><br>COMPLAINT<br><br>Administrative Procedure Act Case |

Complaint—page 1

## NATURE OF COMPLAINT

1. Plaintiffs Ursack, Incorporated, Jacqueline Florine, Gary Fisher, Phoenix and Vamvakias hereby file this lawsuit challenging the actions of Defendants Sierra Interagency Black Bear Group, et al. ("SIBBG"), United States Forest Service and National Park Service for violating federal laws by deciding to withdraw approval of the Ursack S29 bear bag for use in restricted areas of public lands in the Sierra-Nevada Crest (the "Sierra").

2. There are many areas in the Sierra (for example, nearly all of Yosemite) in which backpackers are required under applicable federal legal authorities to carry SIBBG approved bear-resistant food containers. These legal authorities are interpreted, agency policy formed, and resultant legislative and quasi-judicial decisions issued apparently primarily, if not entirely, by SIBBG. Except for Ursack, all such SIBBG approved containers are hard sided and weigh two to three pounds or more. Ursack is made of "bullet proof" fabric and, without its optional aluminum liner, weighs eight ounces and is compressible. No bear canister is perfect. All have failed at one time or another.

3. In May, 2007, SIBBG approved the Ursack S29 Hybrid. In doing so, SIBBG proclaimed that if there were three Ursack "failures" that approval would be withdrawn. This "three failure test" has never been applied to any of the hard sided canisters. In October 2007, SIBBG withdrew approval of Ursack claiming that there had been six failures.

4. Ursack has made regular efforts to attend and participate in SIBBG meetings, particularly where Ursack products are under review. SIBBG has largely rejected Ursack's attempts to participate, specifically including failing to provide Ursack with evidence of alleged "failures" prior to any "hearing" on the Ursack S29 or any opportunity to rebut the evidence considered by SIBBG. After SIBBG announced its decision withdrawing approval, counsel was able to obtain from Defendants access to redacted information supposedly supporting the

"six failure" determination. This evidence shows that there was, at most, one failure. There is only a single allegation of torn fabric, and SIBBG has refused to provide or otherwise identify details of this alleged incident except to note that it occurred in Yosemite Valley—a place where no bear canisters of any kind are permitted. By contrast, there were eight failures of the hard sided "BearVault" in 2005, yet SIBBG did not withdraw approval of this product.

5. SIBBG is not operating in accordance with governing law. Other national parks and forests follow SIBBG's lead, and whatever SIBBG does reverberates throughout the United States. Its testing and approval protocol affects the kind of equipment a backpacker can use and a manufacturer can make. It is important, therefore, to develop a system of testing, rejection and approval that is rational, helpful in guiding entrepreneurs, and useful in solving the problems created by campers bringing food into the back country. Aside from the foregoing attributes, these standards must be properly created and carried out by SIBBG. In order to pursue this goal and advance their legally-protected interests adversely affected by Defendants' actions addressed herein, Plaintiffs bring this action.

## JURISDICTION

6. This lawsuit arises under and alleges violations of the National Park Service Organic Act, 16 U.S.C. §§ 1 et seq.; the Act establishing Sequoia and Yosemite National Parks, 16 U.S.C. §§ 41 et seq.; the Act establishing Kings Canyon National Park, 16 U.S.C. §§ 80 et seq.; the National Forest Management Act ("NFMA"), 16 U.S.C. §§ 1600 et seq.; the Wilderness Act, 16 U.S.C. §§ 1131, et seq.; the Federal Advisory Committee Act, 5 U.S.C. §§ 1, et seq. ("FACA"); implementing regulations for these statutes and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 et seq. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. This Court may issue declaratory relief pursuant to 28 U.S.C. § 2201, and this Court may issue injunctive relief pursuant to 28 U.S.C. § 2202, 5 U.S.C.§ 705, 5 U.S.C. § 706(1), 5 U.S.C. § 706(2)(A) & (D), as well as its general equitable powers.

**INTRADISTRICT ASSIGNMENT**

7. Venue is proper in this Court under 28 U.S.C. § 1391(e) because plaintiff Ursack, Incorporated is headquartered in Mill Valley, California, plaintiff Jacqueline Florine is a resident of Contra Costa County, California, and plaintiffs Gary Fisher and Phoenix Vamvakias are residents of Santa Cruz County, California. San Francisco is the proper division for intradistrict assignment of this suit. L.R. 3.2(c).

8. A present and actual controversy exists between the parties to this action. Any available administrative remedies have been exhausted. 7 U.S.C. § 6914(e). Reviewable final agency action exists that is subject to this Court's review under 5 U.S.C. §§ 702 & 704. Plaintiffs may be entitled to attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412(d).

**PARTIES**

9. Plaintiff Ursack, Incorporated is a California corporation that manufactures and sells light weight bags made of "bullet proof" fabric for use by wilderness campers to prevent bears from getting food rewards. The headquarters of Ursack is in Mill Valley, California. Ursack has been in business since 2000, and has sold bear bags to thousands of satisfied customers. Ursack has suffered harm as a result of the Sierra Interagency Black Bear Group's ("SIBBG") decision to withdraw approval of its products for use in restricted areas of the Sierra.

10. Ursack, Incorporated's viability as a going concern has been and will continue to be adversely affected and irreparably injured if SIBBG's decision to withdraw approval of the Ursack bear bag is allowed to stand. These are actual, concrete injuries caused by the agency's violation of duties under federal law. These injuries would be redressed by the relief that Plaintiff seeks.

11. Plaintiff Jacqueline Florine is an outdoor adventurer who, among other things, holds the female unsupported solo record for hiking the John Muir Trail and the first female solo ascent of El Capitan's Nose route. By using Ursack and other technical advances, she epitomizes the modern trend of backpacking light to achieve more comfort, more range, fewer injuries, more freedom, faster travel and simplicity. The married mother of two, Ms. Florine is a former model who appeared on the cover of Vogue Magazine.

12. Jacqueline Florine's ability to enjoy and explore the Sierra high country has been and will continue to be adversely affected and irreparably injured if SIBBG's decision to withdraw approval of the Ursack bear bag is allowed to stand. These are actual, concrete injuries caused by the agency's violation of duties under federal law. These injuries would be redressed by the relief that Plaintiff seeks.

13. Plaintiff Gary Fisher, Phd is a chemistry professor at De Anza College who has published 20 papers and holds two patents. Mr. Fisher is an avid backpacker and an Ursack user who has hiked throughout the Sierra. Using Ursack provides a reasonable and safe way to lighten the load he carries, thus reducing fatigue, adding to his enjoyment of the wilderness and (because it is almost impossible for a backpacker to carry more than one hard-sided canister) reducing the likelihood of overflow food on trips of more than four days.

14. Gary Fisher's ability to enjoy and explore the Sierra high country has been and will continue to be adversely affected and irreparably injured if SIBBG's decision to withdraw approval of the Ursack bear bag is allowed to stand. These are actual, concrete injuries caused by the agency's violation of duties under federal law. These injuries would be redressed by the relief that Plaintiff seeks.

15. Plaintiff Phoenix Vamvakias recently concluded his employment with the Resources and Science Division of the National Park Service at Tuolomne Meadows in Yosemite National Park. His field work for NPS was primarily in the highly bear impacted

areas of Yosemite. Mr. Vamvakias has backpacked the Sierra since 1983, attended the Sierra Institute of the University of California Santa Cruz, and spent six solid months in the Sierra as part of his Institute training. He has guided backpacking trips for the Southern Yosemite Mountain Guides, Boojum Institute and Ojai Valley School. Mr. Vamvakias has used three generations of Ursacks—preferring them over hard sided canisters because Ursack's light weight and compressibility reduces the stress on his body and thus makes backpacking easier.

16. Phoenix Vamvakias' ability to enjoy and explore the Sierra high country has been and will continue to be adversely affected and irreparably injured if SIBBG's decision to withdraw approval of the Ursack bear bag is allowed to stand. These are actual, concrete injuries caused by the agency's violation of duties under federal law. These injuries would be redressed by the relief that Plaintiff seeks.

17. Defendant Sierra Interagency Black Bear Group is comprised of wildlife biologists and recreation and wilderness managers from Yosemite National Park, Sequoia and Kings Canyon (SEKI) National Parks, and Inyo and Stanislaus and Sierra National Forests formed with the goal of preserving a healthy black bear population free of human influences on a regional scale.

18. Defendant National Park Service is the agency Congress authorized to administer Yosemite, Sequoia and Kings Canyon National Parks and is responsible among other things to ensure that the wilderness character of the Parks is preserved as a place for the public to enjoy. 36 CFR 1.1

19. Defendant United States Forest Service is the agency Congress authorized to administer the Inyo, Stanislaus and Sierra National Forests and to approve all measures that implement SIBBG's decisions as they relate to Forest Service lands.

20. Defendant Sequoia and Kings Canyon National Parks are subunits of the National Park Service comprised of over 866,952 acres of land located along the Sierra Crest. The Parks' main office is located in Three Rivers, California.

21. Defendant Yosemite National Park is a subunit of the National Park Service comprised of over 761,266 acres of land located along the Sierra Crest. The Park's main office is located in Yosemite Valley, California.

22. Defendant Craig Axtell is the Superintendent for Sequoia and Kings Canyon National Parks. As his title implies, he is the supervisor for the Parks and is the ultimate authority for the actions, procedures and decisions of the Parks and is charged with ensuring the Parks comply with applicable law. He is sued solely in his official capacity.

23. Defendant Michael Tollefson is the Superintendent for Yosemite. As his title implies, he is the supervisor for the Park and is the ultimate authority for the actions, procedures and decisions of the Park and is charged with ensuring the Park complies with applicable law. He is sued solely in his official capacity.

24. Defendant Inyo National Forest is a subunit of the United States Forest Service comprised of over 1,900,543 acres of land located along the Sierra Crest. The Forest's main office is located in Bishop, California.

25. Defendant Jim Upchurch is the Forest Supervisor for the Inyo. As his title implies, he is the supervisor for the Forest and is the ultimate authority for the actions, procedures and decisions of the Forest and is charged with ensuring the Forest complies with applicable law. He is sued solely in his official capacity.

26. Plaintiffs are informed and believe, and on that basis, allege that although Stanislaus National Forest and Sierra National Forest are members of the SIBBG, neither Forest mandates the use of SIBBG approved bear-resistant bear containers.

## SPECIFIC ALLEGATIONS

27. Plaintiffs Jacqueline Florine, Gary Fisher and Phoenix Vamvakias have used the Ursack S29 while backpacking in Yosemite, Sequoia-Kings Canyon and Inyo.

28. Ursack has been manufacturing and selling bear bags made from bullet proof fabric since 2000, and has sold thousands of bags made from a variety of fabrics including Kevlar, Vectran and Spectra. The fabrics are woven in different deniers and yarns per inch.

29. In 2004, Ursack manufactured a bag made of Spectra fabric of 1200 denier and 29 yarns per inch. The bag was coated green and called the Ursack TKO. Sometime thereafter, the military requisitioned all available Spectra fabric and as a result Ursack was unable to continue selling that product. In 2006, Spectra again became available and Ursack began manufacturing a bag—renamed the Ursack S29, which refers to Spectra 29 yarns per inch to distinguish it from bags made in prior years of Vectran (V21 and V27). Unless the context otherwise requires, all references in this complaint to Ursack refer to the S29 construction regardless of whether the bag was called TKO or S29. Ursack no longer manufactures products made of Kevlar or Vectran. This lawsuit is solely concerned with the Ursack S29.

30. Ursack has tested all its products with black bears at the Folsom Zoo, which is the zoo facility used by SIBBG to test bear food storage products. Ursack has conducted more than a dozen zoo tests. No commercially available Ursack bear bag has ever been torn by a zoo bear.

31. In 2000, Ursack submitted its first bear bag for inspection and approval by SEKI. SEKI did not test the bag, but refused to approve it for several reasons including the risk that

"if campers do not adequately secure the bags to a tree, bears could easily carry the sacks far away from camps."

32. SIBBG was formed in 2001 and created a testing protocol for all food storage containers. In a May 21, 2001 response to Ursack's request for approval of its Ultra model, SIBBG granted conditional approval following a zoo test with the admonishment that the instructions for the bag must explicitly state that "it MUST be secured to a tree or rock."

33. In the summer of 2004, SIBBG conducted extensive wilderness testing on the S29. There were at least 24 attempts by wild bears to access baited S29s. Three S29s were attacked four or more times. No wilderness bear was able to tear the fabric or obtain a food reward in the course of the SIBBG test. Plaintiffs are informed and believe that SIBBG did not solicit or receive any input from hiking or camping groups as part of its evaluation procedure.

34. Even though the bag performed well in the 2004 wilderness tests, SIBBG refused to approve the S29 because of concerns with bark and soil damage; littering; rabies; and the chance that a user might be injured while chasing a bear away from Ursack.

35. 36 CFR 2.10(d) provides, in part, that food must be kept suspended at least 10 feet above the ground and 4 feet horizontally from a post, tree trunk, or other object, or shall be stored as otherwise designated.

36. Ursack retained a University of California professor of silviculture (forestry) to review and comment on SIBBG's concern that tying Ursack to a tree would damage trees. The expert concluded that Ursack's effect on the environment would be no worse than the routine disturbance naturally caused by bears.

37. SIBBG's concern with soil damage focused on ground below the trees Ursack was tied to being "tilled to a shallow depth."

38. The Forest Service approved of commercial packstock operations within certain SIBBG areas on the basis that it was needed to provide access to those people who would

Complaint—page 9

otherwise not be able to gain access for themselves or their gear. Plaintiffs are informed and believe that commercial packstock have significant impact on the soil.

39. SIBBG was concerned that if a bear crushed food inside a S29, campers would not pack out the Ursack or the food. This was one of the reasons for banning the S29 in SIBBG areas even though 36 CFR § 2.10(b)(2) prohibits leaving refuse after departing a campsite.

40. SIBBG was concerned that there was a slight threat of rabies being transmitted by bear saliva on the outside of the S29. This was one of the reasons for banning the S29 in SIBBG areas even though there has never been a documented case of a rabid bear in California.

41. SIBBG was concerned that humans might attempt to chase bears away from Ursack thereby risking serious injury. This was one of the reasons for banning the S29 in SIBBG areas even though SIBBG instructs campers to attempt to scare away bears with noise. There has never been a report of an injury related to Ursack, and the California Department of Fish and Game lists only 12 bear attacks since 1980 with no fatalities and minimal injuries. Most of the attacks involved sleeping campers, and none involved a person trying to take food away from a bear. According to Yosemite ranger Tori Seher, injuries due to bears are both rare and minor, but many people seek medical attention as a result of ground squirrel bites and the only animal related human fatality was caused by a deer.

42. Black bears are not an endangered species, and thousands have been legally killed by California hunters.

43. In order to address SIBBG's concerns, Ursack developed and sold an aluminum liner for the S29, which prevented food crushing and eliminated the need to tie Ursack to a tree or other fixed object. Ursack with an aluminum liner is designated an Ursack Hybrid.

44. In May 2007, SIBBG approved the use of the Ursack S29 Hybrid with the condition that approval would be withdrawn if there were three failures in 2007. SIBBG did

not distinguish between failure of the product and user error, nor did it explain the basis for choosing the number three as the standard of success. SIBBG does not apply the three failure test to other bear canisters.

45. On October 24, 2007, SIBBG held its annual meeting and reviewed Ursack's performance. It concluded that there were six failure incidents, and as a result withdrew its approval of the S29. Plaintifs are informed and believe that SIBBG did not solicit or receive any input from hiking or camping groups as part of its 2007 evaluation procedure.

46. On November 27, 2007, the National Park Service wrote Ursack to explain SIBBG's decision. It attached redacted "evidence" of the alleged failures. The evidence, mostly in the form of "bear incident reports" showed that there were not six failures. In one case, the bear got no food, in another the culprit was chipmunks. Of the remaining four incidents, Ursack has been in communication with two of the users and examined the S29s and found unequivocally that the bears got food because of user error—a failure of the user to cinch and knot the opening securely. Ursack and its attorney have repeatedly asked for the physical evidence of the other two alleged failures, but have received no response.

47. The only alleged failure in 2007 involving torn fabric, as opposed to user error, was an Ursack used in Yosemite Valley on October 4, 2007. SIBBG has not produced this Ursack or even sent pictures or a report. Federal regulations require all campers in Yosemite Valley to use metal storage bear boxes.

48. Ursack has several competitors, most of which are hard sided canisters. The two hard sided canisters with the largest market share are the Garcia Machine Backpacker's Cache and the Bear Vault. Both have about the same volume as Ursack, but are not compressible and weigh more. The Garcia weighs about 43 ounces, while the S29 Hybrid weighs 22 ounces. The S29 without aluminum liner weighs 8 ounces. The Garcia costs $69.95, the BearVault BV400 costs $79.95, and the Ursack Hybrid costs $84.95 and fits inside most backpacks.

49. The Garcia was invented by Harold Werner, a SEKI ranger and member of SIBBG. The Garcia holds about four days worth of food. It is very impractical, if not impossible, for a backpacker to carry two Garcias.

50. Aside from Ursack, the only soft-sided container available commercially is the Palisade EST from Wilderness-Solutions. The Palisade EST uses electric shock to deter bears. Although submitted for testing, SIBBG has refused to approve the Palisade EST and failed to follow its own published testing protocol. One SIBBG member stated in an email to Wilderness-Solutions that SIBBG is not a regulatory agency, but rather an advisory group.

51. In 2006, Kate McCurdy, a former bear ranger in Yosemite completed a master's thesis about bear canisters in Yosemite. She found, inter alia, that about 40% of canister users were not in compliance with regulations because they could not get all of their food into a single canister. The weight of the canister and the ability to fit it in a backpack were both significant factors affecting the ability of campers to comply with regulations.

52. Both McCurdy's thesis and SIBBG studies show unequivocally that the main reason bears get food rewards in the wilderness is because of "overflow." Campers cannot get all of their food into bulky canisters. There is no SIBBG test for "practicality."

53. There have been failures of both the Garcia and the BearVault in SIBBG areas, but neither have been banned.

54. Garcia sells a replacement lid for its Backpacker's cache. Plaintiffs are informed and believe that the replacement lid is necessary because the lids sometimes wear out, which allows bears to get food rewards.

55. Garcias are sometimes found abandoned in the wilderness—presumably because bears have rolled them away from camp.

56. In 2005, there were eight documented bear incidents involving BearVault in the Rae Lakes area. SIBBG did not withdraw approval of the BearVault, but instead endorsed a program requiring replacement lids in the Rae Lakes area only.

57. SIBBG has required Ursack to be tested in the wilderness. Plaintiffs are informed and believe that no other bear canisters have to undergo a wilderness test.

58. SIBBG does not apply other land use management tests to other bear canisters. There is no scientific basis to assume that an unlined Ursack, when tied to a tree, creates more of a litter problem or contributes to tree or soil damage as compared to hard sided canisters.

59. In June 2007, Ursack, through its attorney, made a formal request for all statistics kept by the NPS with regard to backcountry bear encounters over food. Neither NPS nor SIBBG has supplied those statistics.

60. Ursack has requested the opportunity to attend SIBBG meetings or otherwise appear before SIBBG members, both as members of the interested public and particularly to participate to the maximum extent possible in the analysis of Ursack products. In the past year, Ursack has been denied this attendance and participation. Plaintiffs are informed and believe that groups representing backpackers have never been invited to attend SIBBG meetings.

## FIRST CAUSE OF ACTION

(Substantive and Procedural Authorities – APA)

61. Plaintiffs hereby incorporate by reference each statement and allegation previously made.

62. The above-cited statutes, regulations and authorities establish substantive standards and procedural requirements for Defendants to apply in managing use and enjoyment of the Sierra Parks and Forests at issue herein.

Complaint—page 13

63. Defendants' decision, apparently generated within and announced by the SIBBG, precludes use of Ursack within restricted areas of the Sierra Parks and Forests.

64. Defendants' actions described above are made reviewable through the APA and are arbitrary, capricious, or otherwise not in accordance with law; contrary to constitutional right, power, privilege or immunity; in excess of statutory jurisdiction, authority, or limitations; or without observance of procedure required by law, or otherwise in violation of the APA, 5 U.S.C. § 706 (2), and should therefore be declared unlawful and set aside by this Court.

65. Defendants' inactions described above are made reviewable through the APA and constitute agency action unlawfully withheld or unreasonably delayed, or otherwise violate the APA, 5 U.S.C. § 706 (1), and should therefore be compelled by this Court.

66. Plaintiffs have exhausted all administrative remedies required by law in order to seek relief from Defendants' actions addressed in this claim for relief.

67. Plaintiffs have suffered, and will continue to suffer, harm and injury to their legal interests as a result of the allegations contained in this claim for relief, and these injuries will go unredressed absent judicial relief.

SECOND CAUSE OF ACTION

(Constitutional and Statutory Due Process)

68. Plaintiffs hereby incorporate by reference each statement and allegation previously made.

69. Defendants, acting through and/or including SIBBG, revoked, withdrew or otherwise removed Ursack's approval for use in the Sierra Parks and Forests.

70. Defendants' action occurred without notice to Ursack of the facts or conduct which may warrant the action, without providing Ursack an opportunity to rebut the same, to

Complaint—page 14

demonstrate or achieve lawful compliance, or to be meaningfully heard prior to or after the decision to withdraw Ursack's approval.

71. Defendants' actions were deficient and have illegally deprived Plaintiff of its property interest(s) as protected by the Constitution.

72. Defendants' actions were deficient and have illegally deprived Plaintiff of its property interest(s) as protected by applicable statutes, including the APA, 5 U.S.C. § 558.

73. Defendant's actions described above are made reviewable through the APA and are arbitrary, capricious, or otherwise not in accordance with law; contrary to constitutional right, power, privilege or immunity; in excess of statutory jurisdiction, authority, or limitations; or without observance of procedure required by law, or otherwise in violation of the APA, 5 U.S.C. § 706 (2), and should therefore be declared unlawful and set aside by this Court.

74. Plaintiffs have exhausted all administrative remedies required by law in order to seek relief from the Federal Defendants' actions addressed in this claim for relief.

75. Plaintiffs have suffered, and will continue to suffer, substantial and irreparable harm as a result of the allegations contained in this claim for relief and these injuries will go unredressed absent judicial relief.

### THIRD CAUSE OF ACTION
### (FACA – APA)

76. Plaintiffs hereby incorporate by reference each statement and allegation previously made.

77. The SIBBG was, and is, an "advisory committee" as defined in 5 U.S.C. § 3(2).

Complaint—page 15

78. The SIBBG was established and/or utilized by Defendants in order to accomplish Defendants' management and regulatory functions in the Sierra Parks and Forests and include and specifically involve oversight and regulation of bear-resistant food containers

79. The SIBBG was established and/or utilized by Defendants in violation of applicable law, including but not necessarily limited to violation of the provisions of 5 U.S.C. § 9(a) (failure to be formally recognized by head of agency) and sections 10(a), (b) and (c) (failure to conduct open meetings).

80. Defendants' actions described above are made reviewable through the APA and are arbitrary, capricious, or otherwise not in accordance with law; contrary to constitutional right, power, privilege or immunity; in excess of statutory jurisdiction, authority, or limitations; or without observance of procedure required by law, or otherwise in violation of the APA, 5 U.S.C. § 706 (2), and should therefore be declared unlawful and set aside by this Court.

81. Plaintiffs have exhausted any administrative remedies required by law in order to seek relief from the actions or inactions addressed in this claim for relief.

82. Plaintiffs have suffered, and will continue to suffer, substantial, concrete and irreparable harm and injury as a result of the allegations contained in this claim for relief, and these injuries will go unredressed absent judicial relief.

## FOURTH CAUSE OF ACTION

(Declaratory Relief)

83. Plaintiffs hereby incorporate by reference each statement and allegation previously made.

84. An actual controversy now exists between plaintiffs and defendants as to whether defendants have violated plaintiffs' rights.

85. The parties require a judicial declaration of rights so that they will know their respective rights and duties under the ordinances and laws at issue. It is likely that the claims brought in this litigation will arise again in the future in that Ursack and others will manufacture and sell bear resistant food containers for potential use by campers in SIBBG areas. Thus, a judicial determination of rights will conserve the court's resources and prevent a multiplicity of litigation over these same legal questions.

WHEREFORE, plaintiffs request relief as set forth below:

1. Declare unlawful and set aside Defendants' decision to withdraw approval of Ursack for use in the Sierra Parks and Forests;

2. Declare that Defendants have violated applicable substantive laws and/or acted in contravention of procedure required by law;

3. Compel Defendants to undertake actions required by law that have been unlawfully withheld or unreasonably delayed;

4. Award Plaintiffs reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 2412(d) and other applicable law or rule of court; and

5. Grant such other relief as this Court deems necessary and proper.

Dated: April 2, 2008


Thomas A. Cohen
Law Offices of Thomas A. Cohen

Paul A. Turcke
Moore Smith Buxton & Turcke, Chartered

Richard P. Duane
Duane & Seltzer, LLP

Attorneys for Plaintiffs

**CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

Pursuant to Civil L.R. 3-16, the undersigned certifies that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding: Thomas A. Cohen, owner of Ursack, Incorporated.

Dated April 2, 2008

Thomas A. Cohen
Law Offices of Thomas A. Cohen

Paul A. Turcke
Moore Smith Buxton & Turcke, Chartered

Richard P. Duane
Duane & Seltzer, LLP

Attorneys for Plaintiffs