PAUL A. TURCKE, (applicant *pro hac vice*)
Moore, Smith, Buxton & Turcke, Chartered
950 West Bannock Street, Suite 250
Boise, Idaho 83702
Tel:  (208) 331-1800
FAX: (208) 331-1202
pat@msbtlaw.com

RICHARD P. DUANE (SBN 37880)
DUANE & SELTZER, LLP
2000 Center Street, Suite 300
Berkeley, CA 94704
Tel:  (510) 841-8575
Fax:  (510) 845-3016

THOMAS A. COHEN (CSB 154581)
Law Offices of Thomas A. Cohen
639 Front St., 4th Floor
San Francisco, CA 94111
Tel:  (415) 777-1997
FAX: (415) 777-1990

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| URSACK, Incorporated, JACQUELINE FLORINE, GARY FISHER, and PHOENIX VAMVAKIAS,<br><br>Plaintiffs,<br><br>vs.<br><br>SIERRA INTERAGENCY BLACK BEAR GROUP, NATIONAL PARK SERVICE; UNITED STATES FOREST SERVICE; Sequoia & Kings Canyon National Parks, CRAIG AXTELL, Superintendent; Yosemite National Park, MICHAEL TOLLEFSON, Superintendent; Inyo National Forest, JIM UPCHURCH, Forest Supervisor,<br><br>Defendants. | Case No.: CV 08 1808 SC<br><br>**REVISED**<br>**JOINT CASE MANAGEMENT**<br>**CONFERENCE STATEMENT**<br><br>Date:   July 25, 2008<br>Time:  10:00 a.m.<br>Ctrm:   1, 17th Floor |

The parties in the above-entitled action submit this Joint Case Management Statement and Proposed Order and request the Court to adopt it as its Case Management Order in this case.

**1. JURISDICTION AND SERVICE**

**Plaintiffs' position**

This lawsuit arises under and alleges violations of the National Park Service Organic Act, 16 U.S.C. §§ 1 et seq.; the Act establishing Sequoia and Yosemite National Parks, 16 U.S.C. §§ 41 et seq.; the Act establishing Kings Canyon National Park, 16 U.S.C. §§ 80 et seq.; the National Forest Management Act ("NFMA"), 16 U.S.C. §§ 1600 et seq.; the Wilderness Act, 16 U.S.C. §§ 1131, et seq.; the Federal Advisory Committee Act, 5 U.S.C. §§ 1, et seq. ("FACA"); implementing regulations for these statutes and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 et seq. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. This Court may issue declaratory relief pursuant to 28 U.S.C. § 2201, and this Court may issue injunctive relief pursuant to 28 U.S.C. § 2202, 5 U.S.C.§ 705, 5 U.S.C. § 706(1), 5 U.S.C. § 706(2)(A) & (D), as well as its general equitable powers.

Service has been completed.

**Defendants' position**

Defendants do not concede that the Court has jurisdiction over this matter.

The Office of the U.S. Attorney, Northern District of California, Mary Bomar, and Craig Axtell have been served with process.

**2. FACTS**

**Plaintiffs' position**

Plaintiff Ursack has been manufacturing and selling bear bags made from bullet proof fabric since 2000, and has sold thousands of light weight bags for use by wilderness campers to prevent bears from getting their food. Ursack products undergo vigorous, extensive wilderness testing to ensure their suitability for their intended use by outdoor adventurers and their resistance to attacks by bears. This lawsuit is solely concerned with a bear bag known as the Ursack S-29.

The individual Plaintiffs are all avid backpackers and outdoor adventurers who have used the Ursack S-29.

The Defendant Sierra Interagency Black Bear Group (SIBBG) is comprised of wildlife

biologists and recreation and wilderness managers from Yosemite National Park, Sequoia and Kings Canyon (SEKI) National Parks, and Inyo and Stanislaus and Sierra National Forests whose goal is to preserve a healthy black bear population free of human influences on a regional scale. SIBBG was formed in 2001 and created a testing protocol for all food storage containers.

The remaining Defendant federal agencies are either authorized to administer national parks or have different levels of responsibility in approving measures that implement SIBBG's decisions as they relate to Forest Service lands.

The individual Defendants are Superintendents of various national parks in the State of California and are the ultimate authority for the actions, procedures and decisions of the Parks and are charged with ensuring the Parks comply with applicable law. They are each sued solely in their official capacities.

In May 2007, SIBBG approved the use of the Ursack S-29 Hybrid with the condition that approval would be withdrawn if there were three failures in 2007. SIBBG did not distinguish between failure of the product and user error, nor did it explain the basis for choosing the number three as the standard of success. SIBBG does not apply the three failure test to other bear canisters.

On October 24, 2007, SIBBG held its annual meeting and reviewed Ursack's performance. It concluded that there were six failure incidents, and as a result withdrew its approval of the S-29. Plaintiffs are informed and believe that SIBBG did not solicit or receive any input from hiking or camping groups as part of its 2007 evaluation procedure. Plaintiffs are informed and believe that Defendants failed to follow applicable administrative procedural laws in making their determination about the Ursack S-29 and taking the actions complained of. Plaintiffs have made repeated requests to SIBBG to attend SIBBG meetings or other appear before SIBBG members in order to assist and participate in the analysis of Ursack products. Defendants have denied Plaintiffs this opportunity. Plaintiffs have repeatedly requested from the National Park Service (NPS) the evidence, testing results and statistics used in SIBBG's determination to withdraw its approval of the Ursack S-29. Neither the NPS nor SIBBG has provided the requested material. At this point, the Plaintiffs know of no actual failures of the Ursack product in the sense that none of the "failures" seems to be related to the tearing of the Ursack product or to any other product deficiency. The Plaintiffs believe that one of the alleged incidents did not even involve a bear. In

one of the incidents, Plaintiffs believe, a bear was involved but got no food.

Plaintiffs allege that SIBBG failed to make its decision to withdraw approval of the Ursack S-29 in accordance with governing law. SIBBG's decision was arbitrary and capricious and otherwise in violation of the APA. Plaintiff Ursack further alleges that SIBBG's actions have unlawfully deprived it of its constitutionally protected property rights. Plaintiffs have exhausted all administrative remedies and now seek declaratory relief that Defendants' actions were unlawful and have violated applicable substantive laws and/or acted in contravention of procedure required by law, to compel Defendants to take actions required by applicable law and to award Plaintiffs' reasonable attorneys fees and costs under 28 U.S.C. §2412(d).

Ursack has suffered and will continue to suffer irreparable harm as a result of SIBBG's decision to withdraw approval of its products for use in restricted areas of the Sierra. The individual Plaintiffs' ability to enjoy and explore the Sierra high country has been and will continue to be adversely affected and irreparably injured if SIBBG's decision to withdraw approval of the Ursack bear bag is allowed to stand. These are actual, concrete injuries caused by the agency's violation of duties under federal law.

**Defendants' Position**

The National Park Service ("NPS") and The United States Forest Service ("USFS") have been managing the interaction of humans and black bears for many decades. One of the more significant and dangerous management issues is the need to keep blacks bears from obtaining human food. For both NPS and USFS, management is implemented through national regulations and park or forest specific requirements. One management tool, used by both the USFS and the NPS, is to require that hikers and backpackers only use storage equipment for food and refuse (and other scented items) that has been shown to prevent black bears from obtaining human food (or refuse and other items, such as toothpaste).

In an effort to cooperate in the management of black bears, representatives from Yosemite National Park ("YOSE"), Sequoia and Kings Canyon National Parks ("SEKI"), and Inyo National Forest ("INYO") formed the Sierra Interagency Black Bear Group ("SIBBG") in late 2000. A Memorandum of Understanding (MOU) was finalized by the Superintendents of YOSE and SEKI and the Forest Supervisor of INYO in May 2001. One of the stated goals in the MOU was that "all

1   three agencies agree . . . [t]o adopt uniform testing standards and approval protocols for SIBBG
2   approved bear-resistant food storage containers". SIBBG has produced a number of protocols for
3   testing or evaluating bear-resistant containers. In addition, SIBBG has a website (YOSE staff
4   maintain the website) that contains, among other things, a list of "SIBBG approved" containers
5   (usually called canisters).

6   For the last decade, Plaintiff Ursack, Inc. (Ursack) has been developing, manufacturing and
7   marketing a "soft-sided" bear-resistant container. Since at about the year 2000, Ursack, sought to
8   obtain NPS and USFS approval of various models of its soft-sided product.   In response to
9   Ursack's request for reconsideration, in the spring of 2007, the Superintendents of YOSE and
10  SEKI and the Forest Supervisor of INYO reached a decision "conditionally approving" the Ursack
11  S-29 model container for the summer, 2007.

12  The conditional approval of the Ursack S-29 was posted on the SIBBG website in early May,
13  2007. By its terms, the conditional approval would be withdrawn if there were three failures
14  during the summer of 2007.

15  In October, 2007, the Superintendents of YOSE and SEKI and the Forest Supervisor of
16  INYO withdrew the conditional approval of the Ursack S-29. That decision was "officially"
17  transmitted to Ursack in a letter dated November 27, 2007. The letter noted that there had been six
18  (6) documented failures of the Ursack S-29.

19  On April 3, 2008, the plaintiffs filed their Complaint which seeks, among other things, an
20  order of Court requiring the defendants to approve and authorize the use of Ursack's softsided
21  containers in YOSE, SEKI, and INYO.

22  **3. LEGAL ISSUES**

23  **Plaintiff position**

24  (1) Whether the Defendants violated the applicable laws and regulations in evaluating and
25  judging Plaintiffs' product and subsequently withdrawing its approval of the use of the product in
26  national parks under their respective jurisdictions.

27  (2) Whether the Defendants' acts caused the injuries and damages complained of by the
28  Plaintiff.

(3) Whether Plaintiff is entitled to the relief and damages claimed in the complaint including

the setting aside of the withdrawal of the approval of Ursack for use in the Sierra Parks and Forests, a declaration that Defendants have violated applicable substantive laws and/or acted in contravention of procedure required by law, compelling Defendants to undertake actions required by law that have been unlawfully withheld or unreasonably delayed and whether Plaintiffs are entitled to attorneys' fees and costs pursuant to 28 U.S.C. §2412(d) and other applicable law or rule of court.

**Defendants' Position**

(1) Whether the Court has jurisdiciton.

(2) Whether the Complaint fails to state claims for relief.

**4. MOTIONS**

No prior motions have been filed, and no motions are pending.

**Plaintiffs' position**

Plaintiff may have to move to compel discovery including document productions and depositions but cannot tell whether these acts will be necessary until the administrative record is produced and reviewed. While a motion for summary judgment may be the appropriate manner in which this case is resolved, it may also be that a trial on certain issues is necessary. Again, the Plaintiff cannot now make that determination until the administrative record is reviewed and requests that a new status conference be scheduled at a reasonable time after the production of the administrative record.

**Defendants' Position**

This matter can and should be resolved on cross-motions for summary judgment.

**5. AMENDMENT OF PLEADINGS**

The parties do not anticipate any amendments of the pleadings and do not intend to join any additional parties at this time.

**6. EVIDENCE PRESERVATION**

Plaintiff requests that Defendants take all reasonable steps to preserve any evidence relevant to the issues reasonably evident in this lawsuit. Plaintiff will take similar steps.

**Defendants' Position**

The Defendants have taken all reasonable steps to comply with the evidence preservation

requirements for this matter.

**7. DISCLOSURES**

**Plaintiffs' Position**

Plaintiffs are awaiting the production of the administrative record and may seek additional evidence.

**Defendants' Position**

This is an action for review of an administrative record and exempt from the rule for initial disclosures, pursuant to Rule 26(a)(1)(E), Fed.R.Civ.P.

**8. DISCOVERY**

**Plaintiffs' position**

Plaintiffs have requested the administrative record from the appropriate federal agencies, the NPS or SIBBG related to SIBBG's decision to withdraw approval of the Ursack S-29. Plaintiffs continue to await delivery of the complete administrative record. Plaintiffs reserve the right to take the depositions of any and all persons who participated in the SIBBG decision or who provided material, evidence or statistics upon which that decision was based and the right to seek additional documents if the record or evidence produced seems inadequate to resolve the issues.

**Defendants' Position**

Discovery is neither necessary nor appropriate in this action for review of an administrative record. Defendants are not aware of a request by the plaintiffs for the administrative record, but the defendants have already commenced the process for preparation of the administrative record.

**9. CLASS ACTIONS**

Not applicable.

**10. RELATED CASES**

The parties know of no related cases.

**11. RELIEF**

**Plaintiffs' position**

Plaintiffs seek the following relief:

(1) the setting aside of the withdrawal of the approval of Ursack for use in the Sierra Parks and Forests;

1     (2)  a declaration that Defendants have violated applicable substantive laws and/or acted in contravention of procedure required by law;

2     (3) an Order compelling Defendants to undertake actions required by law that have been unlawfully withheld or unreasonably delayed and

3     (4) the award to Plaintiffs of reasonable attorneys' fees and costs pursuant to 28 U.S.C. §2412(d) and other applicable law or rule of court.

**Defendants' Position**

The grant of summary judgment dismissing the Complaint and awarding costs to the Defendants constitutes the appropriate relief in this case.

**12.  SETTLEMENT AND ADR**

The parties have not yet participated in any settlement discussions and have not yet agreed on an ADR process.

**13.  CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

Both parties did not consent to a magistrate judge for further proceedings.

**14.  OTHER REFERENCES**

**Defendants' position**

This case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**15.  NARROWING OF ISSUES**

**Plaintiffs' position**

Plaintiff agrees that the issues are not amenable to being narrowed but reserves the right to present evidence beyond the administrative record if that evidence is deemed necessary.

**Defendants' position**

The issues are not amenable to being narrowed by agreement or by motion.  The evidence will be presented in the form of the administrative record contained in volumes, indexed, and paginated.

**16.  EXPEDITED SCHEDULE**

The parties do not believe an expedited schedule is appropriate for this case.

**17.  SCHEDULING**

**Plaintiffs' position**

Plaintiffs note that the trial attorney of record, Richard Duane, is scheduled for major surgery on October 28, 2008 and expects to be unavailable for all matters in this action for a minimum of 4 weeks. The only scheduling that seems appropriate is the setting of a date upon which the administrative record will be produced for Plaintiffs' review. Plaintiffs believe that another status conference should be set a reasonable time after the production of the administrative record to discuss further scheduling. Until the production of the administrative record, any other scheduling is premature.

**Defendants' Position**

The parties should stipulate to a schedule for briefing and hearing for cross-motions for summary judgment. The defendants suggest the following briefing be included in such a schedule:

- An agreed upon date for plaintiffs to file/serve their motion for summary judgment;
- An agreed upon date for defendants to file/serve memorandum in opposition to plaintiffs' motion for summary judgment and is support of defendants' motion for summary judgment;
- An agreed upon date for plaintiffs to file/serve their reply memorandum in support of their summary judgement motion and in opposition to Federal Defendants' motion for summary judgment;
- An agreed upon date for the defendants to file/serve a reply memorandum in support of their motion for summary judgment;
- An agreed upon proposed date for hearing the cross-motions for summary judgment.

**18.  TRIAL**

**Plaintiffs' position**

Plaintiff cannot tell whether a trial is appropriate or inappropriate in this case until there is a proper review of the administrative record. The procedure through which this case can be resolved cannot be determined until after the review of the administrative record. If the record is inadequate and new evidence has to be presented to the court a trial may be necessary. If not, the case can be resolve by a motion for summary judgment. This matter should be determined at a subsequent status conference.

**Defendants' Position**

Trial is inappropriate and unnecessary in this record review case. The case should be handled on the briefs for motions for summary judgment based upon the parties' proposed schedule.

**19. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

**Plaintiffs' position**

Plaintiffs know of no other non-party interested entities or persons.

**Defendants' Position**

The Defendants have not filed the "Certification of Interested Entities or Persons," but here certifies that they know of no other persons, firms, partnerships, corporations (including parent corporations) or other entities to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

**20. OTHER MATTERS THAT MAY FACILITATE DISPOSITION**

_____None at this time.

Respectfully submitted,

Dated: July 18, 2008

RICHARD P. DUANE
DUANE & SELTZER, LLP
Attorneys for Plaintiffs

JOSEPH P. RUSSONIELLO
United States Attorney

Dated: July 18, 2008              s/Charles O'Connor
CHARLES M. O'CONNOR
Assistant United States Attorney
Attorneys for Defendants